MATTHEW KERRY (P81793)
214 S Main St. Suite 200
Ann Arbor, MI 48104
Telephone: (734) 263-1193
Facsimile: (734) 661-0765
Email: matt@kerrylawpllc.com

DAVID D. LIN (*pro hac vice* forthcoming)
JUSTIN MERCER (*pro hac vice* forthcoming)
LEWIS & LIN, LLC
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Telephone: (718) 243-9323
Facsimile: (718) 243-9326
Email: david@iLawco.com
Email: justin@iLawco.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TWIN FLAMES UNIVERSE.COM INC., a Michigan corporation; JEFFREY AYAN, an individual resident of Michigan; and SHALEIA AYAN, an individual resident of Michigan, | Case No.: 20-11660 |
| Plaintiffs, | **COMPLAINT FOR DEFAMATION** |
| vs. | **DEMAND FOR JURY TRIAL** |
| MISTY LENAE WARNER f/k/a LENAE BURCHELL, an individual resident of Texas; LOUISE COLE, an individual resident of Arizona; GREGORY ABBEY a/k/a MIGUEL ABBEY, an individual resident of Belgium; and ANDREA SCOTT, an individual resident of Florida, | |
| Defendants. | |

Plaintiffs TWIN FLAMES UNIVERSE.COM INC. ("TFU" or "Twin Flames Universe");

JEFFREY AYAN, ("Mr. Ayan"); and SHALEIA AYAN, ("Ms. Ayan" and collectively with

1

TFU and Mr. Ayan, "Plaintiffs"), for their complaint for damages and injunctive relief against MISTY LENAE WARNER f/k/a LENAE BURCHELL, ("Burchell"); LOUISE COLE, ("Cole"); GREGORY ABBEY a/k/A MIGUEL ABBEY, ("Abbey") AND ANDREA SCOTT ("Scott" and collectively with Burchell, Cole, and Abbey, "Defendants") allege as follows:

## NATURE OF CASE

1.     Twin Flames Universe, operates a set of organizations devoted to spiritual wellness, relationship guidance and self-love through harmonious connection to one's Twin Flame, i.e. your true love or divine counterpart, and which also promote alternative healing and personal lifestyle wellness programs.  Mr. and Ms. Ayan are Twin Flames, spiritual teachers and the founders of TFU. Twin Flames Universe promotes its services through online educational programs, in-person workshops and one-on-one consultations.

2.     Plaintiffs have learned of a conspiracy by a few disgruntled former Twin Flames Universe students and/or volunteers, to smear Plaintiffs' reputations, and create a false, misleading and defamatory image of Plaintiffs' business practices and spirituality. Defendants commenced a pattern of online harassment and disparagement via websites such as Twitter, Reddit, and Facebook, and via their own websites in an effort to dissuade Plaintiffs' prospective customers from doing business with Plaintiff by falsely painting as "abusive," "manipulative," "scammers" and "practi[tioners of] illegal psychotherapy."

3.     First, Defendants openly defamed Plaintiffs in public Reddit posts and Facebook groups dedicated to Twin Flames Universe. Defendants recently banded together again to amplify their negativity by lying to a reporter for Vice Media.

4.     As a part of their scheme and conspiracy, Defendants collectively convinced the Vice Media reporter to publish a fantastical and false account of Defendants' "experiences" with Plaintiffs in Michigan—which painted an impressionist caricature of Twin Flames Universe's

actual business and was otherwise filled with outright misleading statements and lies.

5.      Thus, this is an action for preliminary and permanent injunctive relief and recovery of damages arising from acts of tortious interference, defamation/trade libel, and civil conspiracy in connection with, *inter alia*, Defendants' scheme to besmirch Plaintiffs by making certain misleading and defamatory statements concerning their business across the Internet, and contributing to and then falsely disseminating a Vice Media news article which repeated their unsubstantiated and demonstrably false statements.

6.       Plaintiffs seek injunctive relief, damages, statutory damages, punitive damages and recovery of their costs and reasonable attorneys' fees.

## **PARTIES**

7.      Twin Flames Universe.Com Inc. is a Michigan corporation with its principal place of business in Sutton Bay, Michigan. At the times relevant to the events in this complaint, TFU maintained a place of business in Farmington Hills, Michigan.

8.      Jeffrey Ayan is an individual resident of Michigan. Mr. Ayan is not a public figure and not a public official.

9.      Shaleia Ayan is an individual resident of Michigan. Ms. Ayan is not a public figure and not a public official.

10.     Upon information and belief, Defendant Misty Lenae Warner f/k/a Lenae Burchell is an individual domiciled in the State of Texas. Upon information and belief, Burchell either personally scripted the false postings concerning the Michigan-based Plaintiffs on the various websites and either physically posted them herself or instructed other Defendants and/or her accomplice(s) to do so, under her authority and direction. Upon further information and belief, Burchell conducts substantial business in interstate commerce and within the State of Michigan.

11.     Upon information and belief, Defendant Louise Cole is an individual domiciled in the State of Arizona. Upon information and belief, Cole either personally scripted the false postings concerning the Michigan-based Plaintiffs on the various websites and either physically posted them herself or instructed other Defendants and/or her accomplice(s) to do so, under her authority and direction.

12.     Gregory Abbey a/k/a Miguel Abbey a/k/a Gregory S.M. Abbey is an individual domiciled in the Country of Belgium. Upon information and belief, Abbey either personally scripted the false postings concerning the Michigan-based Plaintiffs on the various websites and either physically posted them himself or instructed other Defendants and/or her accomplice(s) to do so, under his authority and direction. Upon further information and belief, Abbey conducts substantial business in interstate commerce and within the State of Michigan.

13.     Andrea Scott is an individual domiciled in the State of Florida. Upon information and belief, Scott either personally scripted the false postings concerning the Michigan-based Plaintiffs on the various websites and either physically posted them herself or instructed other Defendants and/or her accomplice(s) to do so, under her authority and direction.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action pursuant to the *inter alia*, pursuant to 28 U.S.C. §§ 1332 and 1367 *et seq*. and the laws of the State of Michigan.

15.     This Court has personal jurisdiction over Defendants because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Further, Defendants purposely availed themselves of the laws of the State of Michigan by invoking the benefits and protections of this State in an attempt to cause harm in the State of Michigan, and while Defendants knew Plaintiffs resided and/or operated in Michigan—such that the injury derived from their acts would be and were felt in the State of Michigan.

16.     Defendants also took steps to ensure that their conduct would cause damage and injury to Plaintiffs in the Eastern District of Michigan, by directing posts and articles about Plaintiffs to persons dealing with Plaintiffs in the Eastern District of Michigan. For example, Defendants conspiratorially-contributed article in Vice Media refers to Defendants as, *inter alia*, former "devoted member[s] of an online spirituality school called Twin Flames Universe, led by two glassy-eyed **Michigan** YouTubers calling themselves Jeff and Shaleia," and claims that Defendants "called **Michigan** police" and communicated with "[t]he local police department **in Farmington Hills, Michigan**," (emphasis added) concerning their false claims regarding Plaintiffs.

17.     Further, upon information and belief, Defendants derive substantial revenue from interstate or international commerce in the course of their own acts and conduct.

18.     Further and alternatively, to the extent that Defendant Abbey is not subject to this Court's personal jurisdiction, the action should proceed against him pursuant to Fed. R. Civ. P. 4(k)(2) insofar as at least one of the claims against him arises under federal law.

19.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, because they involve the same parties, they arise from the same operative facts common to the causes of action arising under the federal claims, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

20.     Venue in this judicial district is proper under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## FACTS RELEVANT TO ALL CLAIMS

### A. Twin Flames Universe, MAP and the Church of Union, their Principals Mr. and Ms. Ayan, and their Supporting Commercial Enterprise and Goodwill

21.     Twin Flames Universe.com Inc. is a company founded in 2017 by Jeffrey Ayan and Shaleia Ayan.

22.     Jeffrey Ayan is an author, entrepreneur, businessman, motivational speaker, spiritual teacher and Twin Flame to Shaleia.

23.     Shaleia Ayan is likewise an author, entrepreneur, businesswoman, motivational speaker, spiritual teacher and Twin Flame to Jeff.

24.     Through devoted service and love, they have built a thriving Twin Flame community with over 10,000 people, recorded over 600 hours of Twin Flame Ascension School (TFAS) and Life Purpose classes, and created several other products and companies that are changing the landscape of peoples' lives. Their work teaches self-love, inner peace, and how to have a real relationship with God. The Mirror Exercise, which is at the core of their teaching, empowers people to love themselves completely and take full responsibility for themselves, their feelings, and one's individual experience.

25.     Jeffrey and Shaleia have developed hundreds of hours of material that can support you in cultivating this sustainable and grounded success in one's own life: Twin Flame Ascension School, Life Purpose Class, Twin Flames: Dreams Coming True e-Course, Twin Flames: Romance Attraction e-Course, their YouTube channel, and their book, *Twin Flames: Finding Your Ultimate Lover*. The school's Facebook community, also named "Twin Flames Universe" (or "TFU"), promotes empowerment, self-improvement, and mindfulness through community engagement.

26.     In addition to Facebook and Instagram accounts and profiles, Twin Flames Universe also has an active Twitter account, @TFlamesUniverse (the "TFU Twitter account").

27.     Twin Flames Universe's social media profiles are designed to help consumers gather information about Jeff and Shaleia, their educational programs, their businesses, their services and the spiritual principles of Twin Flames Universe.  As such, the TFU Twitter account is akin to advertising of services for their business.

28.     Mr. Ayan has earned his professional designation in Business and as an entrepreneur, he has founded multiple successful businesses. With a unique understanding of trauma and the mind, Mr. Ayan developed the Mind Alignment Process™ (MAP) after years of helping people successfully heal from the effects of trauma, and subsequently co-founded Plaintiff MAP. It is Mr. Ayan's vision to see a world completely healed of trauma cleanly and easily through health and wellness services like those offered by his businesses.

29.     MAP's website <www.mindalignmentprocess.org> (the "MAP Website") is designed to promote and advertise MAP's informational, educational and consulting services based in Michigan.

30.     The AAC is an organization of graduates and mentors from Twin Flames Universe's Ascension Coach Training Program, a 13-week training course, where future coaches learn how to assist anyone through any challenge they could face in their daily lives using the fundamental spiritual principles of Twin Flames Universe.

31.     The Church of Union (COU) is a not-for-profit religious organization which practices Unionism, the religion evolved from the foundational spiritual teachings brought to the world from all the great messengers such as Moses, Buddha, Krishna, Jesus, Mohammed, and many others. It also builds upon principles taught by A Course in Miracles, Yogananda's body of work, and other spiritual texts based in Truth. At the core of COU's faith and teachings guided by Plaintiffs Jeff and Shaleia are the "Divine Revelations," texts compiled and authored by Plaintiffs Jeff and Shaleia.

32.     While these practices include, *inter alia*, time-honored techniques that are intended to accelerate spiritual development and connections, Plaintiffs' websites, which have been in operation since 2017, do not provide details of same absent authorized access or disclosures, as they consider such information highly confidential and proprietary.

### B.  Defendants' Negative and Unlawful Online Conduct

33.     The journey to discovery of one's Twin Flame is often elusive and seemingly difficult. Thus, although Plaintiffs have worked tirelessly to avoid situations where students may feel disenchanted by their experiences, unfortunately there is a small group of disgruntled former students and/or their family members who have banded together and conspired with one another to make false public statements about Plaintiffs.  The object of this campaign of destruction is ostensibly to torment Plaintiffs publicly, but ultimately is intended to drive customers and believers away from Plaintiffs' platforms and services.

34.     Beginning in or around early 2019 and continuing to the present, in an intentional effort to divert business away from Plaintiffs and toward Defendants, and to cause injury to Plaintiffs, Defendants spewed negative falsities to the detriment of Plaintiffs.

35.     In particular, Defendants have posted taunting material and defamatory statements, authored by Defendants, about Plaintiffs and Plaintiffs' services on various forums, blogs and websites across the Internet.

36.     Defendants' harassing and defamatory posts purported to convey factual information about Plaintiffs and their services, but instead asserted outright falsehoods, while withholding the factual basis upon which many of their falsehoods are allegedly based.

37.     Among other claims, Defendants' various online statements within the last year accuse Plaintiffs of, *inter alia*, (a) promoting isolation and criminal behavior, like stalking, (b) of "practicing illegal psychotherapy on people," (c) engaging in "abusive" and "emotionally

manipulative" conduct designed to "scam" Plaintiffs' students, (d) forcing people in to "unpaid labor," (e) dictating what people should wear, (f) violating persons privacy by posting "intimate details" about people's lives without their consent or permission, (g) "stealing" music and engaging in copyright infringement, and (h) holding "a girl hostage in their basement."

38.     For example, Defendant Burchell has falsely claimed that Plaintiffs encouraged her and to obsess over, fixate upon and cross physical and legal boundaries with a married man and that she worked as an employee for no compensation. These accusations are false insofar as Plaintiffs, neither individually or collectively, encourage people to obsess over or cross legal boundaries in pursuit of their Twin Flame, much less force people into essentially indentured servitude.

39.     Defendant Abbey has also falsely claimed that Plaintiffs are "abusers" and that Mr. Ayan and Ms. Ayan are "suffering from brain damage," while "manipulating vulnerable people and financially, psychologically, and emotionally abusing them." Abbey also falsely claims that Mr. Ayan "stole music" that Abbey created without consent or remuneration. These accusations are false insofar as Plaintiffs, neither individually or collectively, are "abusers" or abuse people. Neither Mr. Ayan nor Ms. Ayan suffer from "brain damage," and Mr. Abbey voluntarily, and with informed consent, created and contributed music to Plaintiffs' businesses for free.

40.     Defendant Cole has also falsely claimed that Plaintiffs are a "cult" and "multi-level marketing scheme" that "forced" her child to distance herself from Cole. These accusations are false insofar as Plaintiffs, neither individually or collectively, operate a "cult" or pyramid scheme. Moreover, Plaintiffs do not encourage distancing from family, much less in exchange for money, as Defendant Cole has falsely claimed.

COMPLAINT

41.     Similarly, in videos posted on her YouTube page between February 2020 to the present, Defendant Scott has also falsely claimed that Plaintiffs are a "cult" and "multi-level marketing scheme."

42.     In support of their attacks, Defendants used Twitter, Facebook, YouTube and Reddit to distribute their false and misleading messages in an effort to draw attention to their negative campaign against Plaintiffs.

43.     On or around May 17, 2019, Defendant Burchell posted a 5-star review she left on the Amazon.com product page for Mr. and Ms. Ayan's book Twin Flames: Finding Your Ultimate Lover.  Then, sometime in the fall of 2019, (around the time that Giacomini engaged in her campaign above) Burchell edited her "review" to spew negative and false statements about Plaintiffs, including that they "brainwash[]" people and engage in emotional manipulation designed to exploit people. However, nothing could be further from the truth.

44.     On September 20, 2019, Defendant Cole responded to a post on the Twin Flames Universe subreddit, calling TFU a "multi-level marketing scheme" and a "cult." These accusations are false and misleading.

C.  **The Vice Media Articles and Defendants' Republications**

45.     Apparently dissatisfied that their online campaign of false statements was initially unsuccessful in disparaging Plaintiffs enough, Defendants banded together to amplify their negativity by lying to a Toronto-based reporter for Vice Media.

46.     As a part of their scheme and conspiracy, Defendants collectively convinced the Vice Media reporter to publish, on or about February 5, 2020, a fantastical and false account of Defendants' "experiences" with Plaintiffs in Michigan—which painted an impressionist caricature of Twin Flames Universe's actual business and was otherwise filled with outright misleading statements and lies. A true and correct copy of the February 5th Vice Article is

10

annexed hereto as **Exhibit A**.

47.     Upon information and belief, Defendants chose the Toronto-based reporter and Vice Media (a company founded in Canada), principally because (a) Plaintiffs have conducted workshops on Toronto in 2019, and (b) that Vice Media's article would target U.S. consumers in close-proximity to Toronto, such as in Southeast Michigan.

48.     In the February 5th Vice Article, Defendants collectively claimed that Plaintiffs have:

  a. "gaslit and manipulated [students] into volunteering hundreds of hours of free labour, exploited for thousands of dollars, discouraged from seeking professional mental healthcare, and cut off from their families. . .unless they send money [to Plaintiffs]."

  b. "coached [students] to ignore rejection and escalate contact with her so-called twin flame, even after he filed a restraining order. She says the group encouraged her to violate that court order, resulting in an arrest and ongoing legal issues."

  c. "coached [students] not to speak to their families, unless they support the group or send money."

49.     In the February 5th Vice Article, Abbey falsely claimed that Plaintiffs "scammed him into creating an album's worth of music for no compensation." The aforementioned statements are completely untrue as Defendant Abbey willingly and voluntarily contributed music to Plaintiffs for free.

50.     In the February 5th Vice Article, Burchell falsely stated that she was encouraged to obsess and fixate and cross boundaries with a married man she thought was her Twin Flame and that she worked for no compensation and that those that asked too many questions were banished. The aforementioned statements are completely untrue as Defendant Burchell was not

encouraged to obsess over people, respect boundaries of others and respect the law—including laws against adultery.

51.     In the February 5th Vice Article, Defendant Cole falsely claimed that Plaintiffs are a "cult" that "forced" her child to distance herself from Cole.  These accusations are false insofar as Plaintiffs, neither individually or collectively, operate a "cult" or pyramid scheme.  Moreover, Plaintiffs do not encourage distancing from family, much less in exchange for money, as Defendant Cole has falsely claimed.

52.     On or about February 5, 2020, Cole reposted the Vice Article on her social media account, further claiming that Plaintiffs operated a "cult."

53.     Defendants specifically intended for the collective scheme to destroy Plaintiffs to gain traction. Indeed, in the February 5th Vice Article, Defendant "ex-members like Abbey and Burchell . . . have since found each other and banded together to warn others."

54.     On February 6, 2020, Defendant Abbey commented on a third party's Facebook post sharing the Vice Article, stating in relevant part as follows:

> Share this as much as possible everywhere. People need to be warned about these abusers." Great work! I hope their cult ends as soon as possible. It will fall inevitably, nothing is exploitive and abusive lasts long nowadays." "You don't have a healthy mindset in you're still into this concept. Let it go, get psychological help and start living your life as a human being in this reality. Watch as your life improves itself once you finally get grounded." "Learn about cluster b personality disorders to prevent yourself from getting boned again. Understand that these two [Jeff and Shaleia] are suffering from brain damage. They don't have a lot of stimulation going on in the prefrontal cortex. Very dominant around the brain stem area (reptile brain). They're basically behind in human evolution with not having the ability to put themselves in other people's shows and being able to create things from scratch etc. I mean look at their work, they're on good in taking ideas, art, music from other people and making it their own. Learn about the brain to understand human behavior. Very interesting stuff." "A lot of these top twin flame teachers show strong signs of narcissism in their behavior." "Their boat is sinking, much like dying. Better a

> quick death than a slow one. But I think their boat will sink in a slow place. It's their choice, but the inevitable will happen. Twin Flame Universe will fall. Manipulating vulnerable people and financially, pscyhologically [sic], and emotionally abusing them comes with a price. You always reap what you sow. Natural law is a bitch in this reality. Glad I'm not in their shoes."

55.     The aforementioned statements are false and misleading. Plaintiffs are not "abusers" and Mr. and Ms. Ayan do not have "brain damage."

56.     On February 13, 2020, Defendant Abbey posted YouTube video titled "TWIN FLAMES JEFF AND SHALEIA EXPOSED BY VICE ARTICLE!!!" and stated that in TFU's Life Purpose Class, Jeff and Shaleia "really enjoy torturing their students when they're breaking down and have an evil smile." This is false and misleading.

57.     On February 25, 2020, Defendant Abbey posted a YouTube video titled "Simple steps to recover from Jeff and Shaleia's twin flame cult" in which he tells people how to leave the cult, block "members in the cult" and provides resources to recover "from the **abuse**." (emphasis added). This is also false and misleading, as Plaintiffs do not "abuse" their members or students, much less operate a "cult."

58.     On or around March 9, 2020, Plaintiffs TFU sent Defendants a cease and desist letter demanding they retract their false statements set forth in the February 5th Vice Article. To date, Defendants have refused to comply with Plaintiffs' demands to cease and desist.

59.     Instead, Defendants campaigned to manipulate the truth to the Vice Media reporter again, spurring her to publish, on March 11, 2020, another scathing and defamatory article based on Defendants' statements regarding Plaintiffs.  A true and correct copy of the March 11th Vice Article is annexed hereto as **Exhibit B**.

60.     Defendants Burchell and Cole repeated many of their false and defamatory statements from the February 5th Vice Article again in the March 11th Vice Article.

61.     However, this time, Defendants added to the cacophony of lies by also falsely claiming that Plaintiffs encouraged a transgender member, to undergo and promote "gender conversion coaching" and that Plaintiffs "coached" students "who identify as gay or bisexual. . .into pursuing new gender identities that fit with Twin Flames' hetero-centered ideas." This is false as no one is forced to engage in any gender conversion techniques or rhetoric permitted, endorsed or performed.  Plaintiffs and Plaintiffs' services are inclusive and welcome to all persons, regardless of gender identity or sexual orientation.

62.     On or about February 10, 2020, Defendant Scott linked to, republished and referenced the February 5th Vice Article in a video on her YouTube page.

63.     Since that first Vice Article, Defendant Scott has published more than a dozen videos, each of them denigrating Plaintiffs and referencing the "Truth about Twin Flame Universe (Jeff and Shaleia)."  While Scott misleading uses the term "truth" nothing in her purported truth telling is factually accurate or true.

64.     For instance, on or around April 18, 2020, Scott posted a video accusing Plaintiffs of being "fake and very cult-like" and "harming people not only financially but emotionally."

65.     On June 7, 2020, Scott posted another video where she republished the Vice Articles, as well as disparaging, false video links from other third parties.

66.     Moreover, upon information and belief, Defendants knew that their fabrications of Plaintiffs' dealings with them and any other students were false at the time Defendants made the above defamatory statements, such that Defendants' statements regarding Plaintiffs are false and/or were made with reckless disregard as to the truth or falsity of same.

67.     In other words, Defendants perpetrated as simply former students to denigrate Plaintiffs for the sole purpose of harming Plaintiffs' reputation and causing them to lose revenue, as the statements set forth above bear directly on Plaintiffs' services, professional capabilities,

business practices, and treatment of their clients and students—all key aspects of Plaintiffs'
business and factors that any person considers before choosing a spiritual guide, church or life
coach.

68.     As a result of Defendants' misconduct, Plaintiffs have been and continue to be
substantially and irreparably harmed.

**D.  <u>Financial Damage to Plaintiffs' Reputations and Business</u>**

69.     Plaintiffs had and continue to have contractual relationships with their students,
followers, and customers. These contracts include annual or monthly installment plan
subscriptions for access to various portions of Plaintiffs' websites.

70.     Defendants were keenly aware of Plaintiffs' contracts, not only because they were
former students who directly contracted with or contact Plaintiffs, or are family members of one
of Plaintiffs' students similarly situated, but also because their defamatory statements included
negative associations with Plaintiffs' contractual business models, including statements within
the Vice Articles denigrating Plaintiffs' website which identifies and details contracts.

71.     The Defendants scripted and caused to be disseminated the above statements in
order to interfere with Plaintiffs' contractual relationships with their students, followers, and
customers, and upon information and belief, to injure Plaintiffs' business by inducing Plaintiffs'
their students, followers, and customers s and prospective students to cease doing business with
Plaintiffs.

72.     Since the appearance of the defamatory and misleading statements, several
students have claimed to have read the Vice Articles and/or online posts and have emailed, called
or messaged to inquire about the truth of the false statements therein and terminated contracts
with Plaintiffs.

73.     As a direct and proximate result of Defendants' defamatory conduct described

herein, a number of Plaintiffs' students and customers have refused to start and/or continue business with Plaintiffs.

74.     Specifically, on or about February 10, 2020, Plaintiffs' student S.B. cancelled their annual subscription to TFU's All Class Pass, less than two months in to S.B.'s contract. S.B. stated that the reason for S.B.'s cancellation was the Defendants' statements about Plaintiffs made in the February 5th Vice Article. As a result of S.B.'s cancellation, Plaintiff TFU lost approximately $2,519.00 on the remaining value of S.B.'s contract.

75.     On or about February 22, 2020, Plaintiffs' student G.N. cancelled their annual subscription to TFU's Life Purpose Class, just over one month in to G.N.'s contract.  G.N. stated that the reason for G.N..'s cancellation was the Defendants' statements about Plaintiffs made online, including referencing accusations derived solely from Defendants' statements of TFU being a "cult, angry and abusive". As a result of G.N..'s cancellation, Plaintiff TFU lost approximately $1,890.00 on the remaining value of G.N.'s contract.

76.     On or about February 24, 2020, Plaintiffs' student J.O. cancelled their annual subscription to TFU's One Class Pass, less than one month in to J.O.'s contract.  J.O. stated that the reason for J.O.'s cancellation was the Defendants' statements about Plaintiffs made in the February 5th Vice Article. As a result of J.O.'s cancellation, Plaintiff TFU lost approximately $1,309.00 on the remaining value of J.O.'s contract.

77.     Specifically, on or about February 24, 2020, Plaintiffs' student A.T. cancelled their annual subscription to TFU's One Class Pass, less than one month in to A.T.'s contract. A.T. stated that the reason for A.T.'s cancellation was the Defendants' statements about Plaintiffs made in the Vice Articles. As a result of A.T.'s cancellation, Plaintiff TFU lost approximately $1,309.00 on the remaining value of A.T.'s contract.

78.     While Plaintiffs' businesses persevere, Defendants' campaign to defame and

injure Plaintiffs have caused their students significant concern about the propriety of Plaintiffs' teachings, services and programs, such that the trend of fewer students is likely and the risk of losing students is tangible and real.  Without their students, followers, and customers, Plaintiffs' will have no businesses.  This damage is in addition to the permanent and irreparable harm to Plaintiff's professional and personal reputations that Defendants' defamatory conduct has caused (and will continue to cause unless enjoined).

### FIRST CLAIM FOR RELIEF
### DEFAMATION PER SE, INJURIOUS FALSEHOOD, TRADE LIBEL and COMMERCIAL DISPARAGEMENT

79.     Plaintiffs repeat and incorporate herein by reference each and every one of the allegations contained in paragraphs 1 through 74, with the same force and effect as if set forth in detail herein again.

80.     Defendants have intentionally made knowingly false statements of fact about Plaintiffs and Plaintiffs' services as set forth above.

81.     These statements were made maliciously and willfully and were intended to cause harm to Plaintiffs' businesses and reputations.

82.     The aforementioned statements were false when made and Defendants knew or should have known that the statements were false when made.

83.     These statements were made maliciously and willfully and were intended to cause harm to Plaintiffs' reputations.  The statements were made with reckless disregard for their truth or falsity or with knowledge of their falsity and with wanton and willful disregard of the reputation and rights of Plaintiffs.

84.     The aforementioned statements were made of and concerning Plaintiffs and were so understood by those who read Defendants' publication of them.

85.     These statements constitute injurious falsehoods and trade libel, which impugn the integrity of Plaintiff and the quality of Plaintiffs' services. These statements were expressly directed at Plaintiff.

86.     These statements were false and were published to third parties in this district and across the Internet.

87.     Defendants have no privilege to assert their false and disparaging statements.

88.     As a result of Defendants' acts, Plaintiffs have suffered irreparable damage to its reputation and further special damages in the form of lost sales and profits, in an amount to be determined at trial.

89.     As a result of the willful and malicious nature of the defamation, Plaintiffs are entitled to punitive damages.

**SECOND CLAIM FOR RELIEF**
**FOURTH CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AND**
**<u>PROSPECTIVE CONTRACTUAL RELATIONS</u>**

90.     Plaintiffs repeat and incorporate herein by reference each and every one of the allegations contained in paragraphs 1 through 74, with the same force and effect as if set forth in detail herein again.

91.     Plaintiffs had existing contracts with its customers and students, and reasonably expected that its contractual relationships with its customers would continue into the future.

92.     Defendants knew of Plaintiff's contracts, as they were reported online, and Defendants were former students or family members of current students of Plaintiffs.

93.     By the wrongful conduct described above, Defendants internationally and improperly interfered with Plaintiffs' contracts with its customers and did so with the intent and purpose of damaging Plaintiffs' business.

18
COMPLAINT

94.     Defendants' interference caused Plaintiffs' customers confusion and to cease doing business with Plaintiffs.

95.     As a result of Defendants' actions, Plaintiffs have been and continue to be damaged in an amount to be determined at trial.

96.     Plaintiffs have also suffered and will continue to suffer irreparable harm in the form of damage to their reputations as a result of Defendants' conduct described herein.

97.     While an award of damages may be adequate to compensate Plaintiffs for the loss of particular contracts or customers, an award of damages will not be adequate to compensate Plaintiffs for the damage to their reputation caused by Defendants.  Plaintiffs have suffered and will continue to suffer irreparable harm unless injunctive relief is granted.

**THIRD CLAIM FOR RELIEF**
**CONSPIRACY**

98.     Plaintiffs repeat and incorporate herein by reference each and every one of the allegations contained in paragraphs 1 through 74, with the same force and effect as if set forth in detail herein again.

99.     Defendants published the above statements concerning Plaintiffs and created the impersonating social media profiles, with the specific intent and desire to injure Plaintiffs by fraud and deceit.  Defendants' course of conduct in doing so was motivated by spite and malevolence and has no legal justification.

100.    Defendants as identified herein have formed a combination and are acting in concert together to commit one or more unlawful or otherwise actionable acts as set forth herein, including actions by unlawful means to commit these unlawful or otherwise actionable acts.

101.    Defendants formed an agreement to inflict a wrong against, or otherwise injure, Plaintiffs as set forth herein.

COMPLAINT

102.    As a result, every member of said conspiracy, which includes all Defendants herein, is equally and vicariously liable for the damages inflicted upon Plaintiffs regardless of whether that individual Defendant committed the overt act that led to, or proximately caused, the injury or damages to Plaintiffs.

103.    By reason of the foregoing, Defendants have caused irreparable harm to Plaintiffs' personal and professional reputations, putting the future of the business in jeopardy— as well as their ability to defend their reputations.

104.    As a result of Defendants' past and continued wrongful acts, Plaintiffs have suffered damages to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants awarding Plaintiffs:

1.    Enter a judgment declaring that Defendants' conduct constitutes defamation;

2.    Enter a judgment declaring that Defendants' conduct constitutes injurious falsehood;

3.    Enter a judgment declaring that Defendants' conduct constitutes tortious interference;

4.    Enter a judgment declaring that Defendants' conduct constitutes civil conspiracy;

5.    Award Plaintiffs compensatory damages according to proof at trial but in an amount not less than $1,000,000.00;

6.    Award Plaintiffs punitive damages pursuant to the common law, due to Defendants' willful and wanton behavior;

7.    Enter a temporary and permanent order, enjoining Defendants from publishing the false advertising statements identified above, in relation to themselves or Plaintiffs, or any false statements similar thereto, and directing Defendants and

their respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, to remove, delete, or otherwise disable such reviews and posts;

8.     That the Court issue an Order at the conclusion of the present matter directing Defendants to undertake such remedial efforts as the Court deems necessary to restore Plaintiffs' reputation;

9.     That Plaintiffs be awarded pre- and post-judgment interest to the maximum extent allowed by law;

10.     Award Plaintiffs reasonable attorney's fees, costs and disbursements in this civil action; and

11.     Enter such other and further relief to which Plaintiffs may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED this 23rd day of June, 2020.     Respectfully submitted,

s/ *Matthew Kerry*
MATTHEW KERRY (P81793)
214 S Main St. Suite 200
Ann Arbor, MI 48104
Telephone: (734) 263-1193
Email: matt@kerrylawpllc.com

LEWIS & LIN LLC

David D. Lin (*pro hac vice* forthcoming)
Justin Mercer (*pro hac vice* forthcoming)

Attorneys for Plaintiffs

COMPLAINT