UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TWIN FLAMES UNIVERSE.COM,
INC., *et al.*,

              Plaintiffs,

                                    Case No.: 20-11660

v.                                       Honorable Gershwin A. Drain

LOUISE COLE, an Arizona resident; *et al.*,

              Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANT LOUISE COLE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION [#5]

### I.    INTRODUCTION

Plaintiffs Jeffrey and Shaleia Ayan are authors, entrepreneurs, spiritual teachers, "twin flame" to the other, and founders of Plaintiff Twin Flamesuniverse.com ("TFU"), a Michigan corporation with its principal place of business in Sutton Bay, Michigan. Plaintiffs filed the instant action against nonresident Defendants Misty Lenae Warner, Louise Cole, Gregory Abbey, and Andrea Scott alleging claims of defamation, tortious interference with contractual relations and civil conspiracy. Plaintiffs' claims stem from the Defendants' purported harassing social media posts and alleged false statements to a Vice Media reporter concerning Plaintiffs and their business practices. Defendants are

either ex-members of Plaintiff TFU or family members of current TFU members. Defendants are from the States of Texas, Arizona, and Florida and the Country of Belgium, respectively.

Defendant Cole, an Arizona resident and mother of a current TFU member, has filed a Motion to Dismiss for Lack of Personal Jurisdiction. The matter is fully briefed, and the Court held a hearing on March 3, 2021. For the following reasons, the Court will grant Defendant Cole's Motion to Dismiss for Lack of Personal Jurisdiction.

## II.    BACKGROUND

### A.  TFU

TFU is a set of organizations devoted to spiritual wellness, relationship guidance, and self-love through a connection with your "Twin Flame," or your true love. ECF No. 1, PageID.2. Plaintiffs claim their work "teaches self-love, inner peace, and how to have a relationship with God" through a series of online seminars and e-courses that Mr. Ayan developed from his "unique understanding of trauma and the mind." *Id.* at PageID.6-7. Plaintiffs allege their online educational courses and seminars utilize Mr. Ayan's "Mind Alignment Process" to help people successfully heal from the effects of trauma. *Id*. Plaintiffs' courses also teach the core "'Mirror Exercise' . . . empower[ing] people to love themselves

completely and take full responsibility for themselves, their feelings, and one's individual experience." *Id.*

Plaintiffs have increased the size of TFU to roughly 10,000 members and have "business across the Internet." *Id.* at PageID.3, 6. Members have access to over 600 hours of online life purpose classes, including, but not limited to, Twin Flames: Dream Coming True e-Course, Twin Flames: Romance Attraction e-course, the Ayans' book, *Twin Flames: Finding Your Ultimate Lover*. TFU also includes an off-shoot organization, AAC, which consists of graduates and mentors from TFU's Ascension Coach Training Program, a 13-week course, "where future coaches learn how to assist anyone through any challenge" using the fundamental TFU spiritual principles. *Id*. at PageID.7. TFU also includes the Church of Union, a not-for-profit religious organization which practices Unionism guided by the Ayans through their book, the *Divine Revelations*. *Id.*

**B.  Defendants' Social Media Activity**

Plaintiffs allege Defendants engaged in a purported conspiracy beginning in or around 2019–through their social media posts on YouTube, Facebook, and Reddit–accusing Plaintiffs of, *inter alia,* (a) promoting isolation and criminal behavior, such as stalking, (b) "practicing illegal psychotherapy on people," (c) engaging in "abusive" and "emotionally manipulative" conduct designed to "scam" Plaintiffs' students, (d) forcing people into "unpaid labor," (e) dictating what

3

people should wear, (f) violating persons privacy by posting "intimate details" about them without their consent or permission, (g) "stealing" music and engaging in copyright infringement, and (h) holding "a girl hostage in their basement." *Id.* at PageID.8-9.

Plaintiffs claim Defendants' intent is to "smear Plaintiffs' reputations, and create a false, misleading and defamatory image of Plaintiffs' business practices and spirituality." *Id.* at PageID.2. Plaintiffs assert Defendants' posts are harassing and meant to spread falsehoods in order to drive away TFU clientele and believers to the detriment of Plaintiffs' services. *Id.* at PageID.8.

As for Defendant Cole, she likewise posted negative comments about TFU's practices. In September of 2019, she responded to a post on a TFU subreddit and used the terms cult and multilevel marketing scheme to describe the TFU organization. In October of 2019, in the same subreddit concerning TFU, she made the following comments:

> **"TWIN FLAME" Cyber Cult?   Concerned for a loved one.**
> How can you say I was rude when I absolutely called it? Everything I said is the truth. If this is so wonderful why can't you question J&S 'teachings.' They will turn your question around to you! You have the problem that needs to be healed, do your inner work, do the mirror exercise. That's what they will say. If something is legitimate, questions should be welcomed, not shut down. People find a mate every day without being a part of this MLM cult. Love yourself by walking away from this toxic cult. I pray for you.

**"TWIN FLAME" Cyber Cult?  Concerned for a loved one.**
You are obviously involved in it somehow.  You are just as brainwashed as the rest of them.  I feel bad for you.

**"TWIN FLAME" Cyber Cult?  Concerned for a loved one.**
This is indeed a cult, a multi-level marketing cult to be exact.  I know firsthand as I have lost my beautiful daughter to these sick evil people who prey on lonely desperate impressionable people. They brainwash their followers to believe that they are the second coming of Christ, and since they are the chosen ones, they have all the answers anyone could want.  They promise wealth, finding your Twin Flame and fame.  Who wouldn't want that?  That's how they suck you in, then they say the only way to achieve all this is to buy their "classes," which are a complete crock of garbage.  If your loved one is in any way interested in this group, I say run!  Unfortunately for me, I didn't find this out until it was too late.

**Welcome to a Reddit Community dedicated entirely to TwinFlamesUniverse**
This is such a crock! Brianna, haven't you figured out that this is nothing more than a multilevel marketing cult?  Wake up!

**TwinFlamesUniverse has been created**
J&S should be ashamed of themselves. They prey on lonely, desperate and impressionable people.  Karma is a bitch and they will get theirs!

ECF No. 9, PageID.121.

## C. February 5, 2020 VICE Media Article

Plaintiffs further claim that Defendants lied to a Vancouver based reporter for Vice Media, an online news organization. Plaintiffs assert Defendants made outlandish and false statements to the reporter in order to further amplify negativity surrounding TFU and Plaintiffs. Plaintiffs claim "[u]pon information and belief" the Defendants used the Canadian news source because Plaintiffs conducted

workshops in Toronto in 2019 and in order to target current and prospective consumers in close-proximity to Canada, such as those in Southeast, Michigan. ECF No. 1, PageID.11.

On February 5, 2020, VICE Media published an article entitled, "*This YouTube School Promised True Love.  Students Say They Got Exploited Instead*." ECF No. 5-2, PageID.57.  In the article, the author indicated TFU was "led by two glassy-eyed Michigan YouTubers[,]" who call themselves "[t]he Master Christ, eternal ruler of all creation by God's loving hand." *Id*. at PageID.58, 61.  The Defendants interviewed for the article are either former members of TFU or parents of current TFU members.

In the article, former members of TFU claimed Plaintiffs have manipulated students into volunteering hundreds of hours of free labor, discouraged students from seeking professional mental healthcare, exploited thousands of dollars out of students, cut students off from their families unless the families sent money to Plaintiffs, and coached students to ignore rejection and escalate contact with their "twin flame." *Id*. at PageID.60.  Defendant-former TFU members explained they invested large sums of money in Plaintiffs, including $2,222.00 for unlimited access to relationship videos, $1,899.00 for unlimited life purpose videos and roughly $200.00 per session for one-on-one work with a coach. *Id.* at PageID.63.

Additionally, if members sold a lifetime membership worth $2,222.00, they were eligible for a 10 percent commission. *Id*.

Several parents of current TFU members were also interviewed for the article, including Defendant Cole. In the article, Defendant Cole described her daughter, Stephanie, as a "go-getter" who has worked in the Peace Corps and taught English overseas. ECF No. 5-2, PageID.66. Defendant Cole explained that she was under the impression her daughter was taking classes in Chinese medicine. *Id*. She later found out her daughter paid money to a "New Age YouTube channel" for travel, classes and accommodations. *Id.* Defendant Cole estimated her daughter paid as much as $5,000.00 before she cut off communication with the whole family. The article noted that two other parents shared similar stories of "scarce contact" dictated by the group. *Id.* Other parents, who declined to be identified, indicated they had contacted the police in Farmington Hills, Michigan to file complaints, however the police department would not confirm this information for the article. *Id.* at PageID.68-69.

A professor emeritus and expert on cults at California State University was also interviewed for the article. *Id*. at PageID.60. She told Vice that TFU "fits into a constellation of self-help and wellness cults that sell sweeping answers to life's biggest problems, and disguise thought reform and manipulation practices as

therapy."  *Id.*  Defendant Cole reposted the February 5, 2020 article on her social media account.  ECF No. 1, PageID.12.

### D. Plaintiffs' March 2020 Cease and Desist Letter

After the publication of the February VICE Media article, Plaintiffs sent a cease-and-desist letter to Defendants and others.  ECF. No. 5-3.  Addressed to "TFU Victims," Plaintiff's letter details the grief they felt as a result of Defendants' campaign of online harassment.  *Id.*  In the letter, Plaintiffs ordered Defendants to "disband and end" their "hate group," and threatened to force Defendants into bankruptcy from case-related expenses.  *Id.* at PageID.72.  Plaintiffs' letter stated in pertinent part:

> We will also pursue you to the FULLEST extent of the law for your crimes.  We will subpoena every single social media outlet for your identities, your IP addresses, your computers and hard drives, your google accounts for every single defamatory and illegal thing. Computer professionals with warrants will follow every detail of your digital footprint and collect all of the evidence.  Police and detectives will be sent to each and every one of your homes to investigate you thoroughly.  We will drag you in and out of court for a long, long time.  We will set a precedent in the court system to protect people all over the world from cyber bullies like you.

*Id.*

Plaintiffs' letter also advised, "[w]e will subpoena you ALL to courts in Michigan, where you don't live, and you will have to pay travel expenses, hotels, food, court fees, lawyer fees in addition to the money we will sue you for."  *Id.* at PageID.73.  Plaintiffs ended their letter by insisting the Defendants, among other

acts, write a retraction and delete their attacks against TFU from the internet.  *Id*. at PageID.74.  None of the cease and desist letter recipients sent VICE a retraction. ECF No. 5, PageID.45.

### E.  March 11, 2020 Vice Media Article

In a March 11, 2020 follow-up article entitled, "*Accused Cult Leader Threatened Ex Members after VICE Investigation*," Vice Media discussed the Plaintiffs' cease and desist letter.  ECF No. 5-4, PageID.77-85.  The article noted that several current members posted "My Success Story" in response to the February 5, 2020 article. *Id*. at PageID.84. In the follow-up article, Defendant Cole described her daughter's "My Success Story" video and the other current members' videos as "[t]hey all sound alike, it sounds scripted."  *Id*. Defendant Cole further remarked that she "had no thought in my head whatsoever about retracting anything." *Id*. at PageID.85.  Finally, she noted that she was still unable to contact her daughter.  *Id.*

Plaintiffs allege that since the publication of the Vice Media articles, at least four persons have cancelled contracts with TFU.  *Id.* atPageID.16-18.

## III.   LAW & ANALYSIS

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2). The plaintiff bears the

burden of establishing personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). In the face of a motion to dismiss pursuant to Rule 12(b)(2), the plaintiffs "may not stand on [their] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *GM L.L.C. v. Autel.US Inc*., No. 14-14864, 2016 U.S. Dist. LEXIS 40902, at *7 (E.D. Mich. Mar. 29, 2016) (internal citation and quotation marks omitted); *see also Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

If the court decides the motion on the affidavits, "Plaintiff[s] must make only a *prima facie* showing of personal jurisdiction in order to defeat dismissal." *Id*. Plaintiffs can meet their burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Lexon Ins. Co. v. Devinshire Land Dev., LLC*, 573 F. App'x 427, 429 (6th Cir. Jul. 21, 2014). A district court must construe the presented facts in the light most favorable to the non-moving party and "may not consider conflicting facts offered by [the moving party]." *GM L.L.C*., 2016 U.S. Dist. LEXIS 40902, at *7–8 (citing *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 887 (6th Cir. 2002)).

## B.  Personal Jurisdiction

Defendant Cole argues personal jurisdiction over her does not exist because she merely posted her opinions about Plaintiffs on social media and cooperated with a Canadian journalist in exposing Plaintiffs' conduct toward TFU members from her home in Arizona.  Defendant Cole further maintains she did not direct her social media posts to Michigan, and Michigan is only connected to this litigation because Plaintiffs are either residents of or incorporated in Michigan.

Conversely, Plaintiffs argue the Court has limited personal jurisdiction over Cole because a substantial part of the events or omissions giving rise to their complaint occurred within the Court's judicial district. Plaintiffs further assert Defendant Cole took steps to directly aim her defamatory and harassing social media posts and comments at the Eastern District of Michigan.

In order to determine whether personal jurisdiction exists, a district court typically engages in a two-step inquiry analyzing whether the forum's long-arm statute and the Due Process Clause permit the exercise of personal jurisdiction. *See Bird v. Parsons*, 289 F.3d 865, 871(6th Cir. 2002); *see also Lak, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1298 (6th Cir. 1989) (the federal court must "look to the law of the forum state to determine the district court's 'in personam jurisdictional reach.'"  (quoting *So. Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 375 n.2 (6th Cir. 1968)).

In this case, Michigan's long-arm "statute confers on the state courts the maximum scope of personal jurisdiction permitted by the due process clause of the Fourteenth Amendment," *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236 (6th Cir.), cert. denied, 454 U.S. 893 (1981), thus, "the two [jurisdictional] inquiries merge and the Court need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process." *Aristech Chem. Int'l v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir. 1988) (internal quotation marks and citation omitted); *see also Intera Corp. v. Henderson,* 428 F.3d 605, 615 (6th Cir. 2005)*; Zellerino v. Roosen*, 118 F. Supp. 3d 946, 950 (E.D. Mich. 2015)("Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional Due Process requirements, and thus, the two questions become one.")(citations omitted).

Therefore, resolution of Defendant Cole's present motion turns on whether exercise of personal jurisdiction comports with her federal due process rights. *Lifestyle Lift Holdings, Inc. v. Prendiville*, 768 F. Supp.2d 929 (E.D. Mich. 2011) (citing *Chandler v. Barclays Bank PLC*, 898 F.2d 1148, 1150 (6th Cir. 1990); *Bridgeport Music, Inc. v. Still N the Water Pub*, 327 F.3d 472, 477 (6th Cir. 2003)).

Due process requires the following in order for a court to exercise limited[1] personal jurisdiction over a nonresident defendant: (1) the defendant must purposefully avail herself of the privilege of acting in the forum state or causing a consequence to occur there; (2) the cause of action must arise from the defendant's activities there; and (3) the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *See So. Machine Co.*, 401 F.2d at 381. In order to comply with due process, "out-of-state defendants" must "have 'minimum contacts' with the forum state sufficient to comport with 'traditional notions of fair play and substantial justice.'" *Blessing v. Chandrasekhar*,__ F.3d __, 2021 U.S. App. LEXIS 5222, *29 (6th Cir. Feb. 23, 2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

In *Calder v. Jones*, the Supreme Court set forth the "effects" test for resolving personal jurisdiction in libel actions. 465 U.S. 783, 788-89 (1984). The *Calder* court held Florida-based authors could be haled into a California court because of the "effects" of their National Inquirer story, written about a California actress – whose career was centered in California – and her alleged unprofessional

---

[1] Michigan's long arm statute which authorizes the exercise of general personal jurisdiction over non-resident individuals is inapplicable here. *See* MICH. COMP. LAWS § 600.701 (permitting general personal jurisdiction if the individual is either present or domiciled in the state when process is served, as well as if the individual consents and MICH. COMP. LAWS § 600.745 is satisfied).

activities in California. *Id*. at 788-89.   The National Enquirer had its largest circulation in California at the time.  *Id*. To get their story, the authors reached out to sources in California for statements.   *Id*. at 790.   Based on these facts, the *Calder* court concluded that the authors had "expressly aimed [their conduct] at California" and they knew the injury would be felt where the actress lived and worked, and the story would be widely read in California where the brunt of the actress's reputational harm will be suffered.  *Id*.

Since the *Calder* decision, the Supreme Court has cautioned that "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  In *Walden,* the Supreme Court explained that the "crux of *Calder*" is the "reputation based effects" or the injury to the actress's "reputation in the estimation of the California public" coupled with "the various facts that gave the article a California focus, [that] sufficed to authorize the California court's exercise of jurisdiction." *Id*. at 287-88.

Conversely, a Drug Enforcement Agent could not be haled into a Nevada court after he seized funds from Nevada residents at a Georgia airport, even though he knew their home state and it was foreseeable they might suffer harm there.  *Id*. at 288-91 (holding the "[p]etitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at respondents whom he knew had Nevada connections.") *Id.* at 289.  The *Walden*

court explained "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.

The Sixth Circuit Court of Appeals recently issued a decision bearing on personal jurisdiction and alleged defamatory internet activity. *See Blessing,* 2021 U.S. App. LEXIS 5222, at *22. In *Blessing*, "[a] group of high school students from Kentucky received widespread attention for their conduct at the Lincoln Memorial during the 2019 March for Life Rally." 2021 U.S. App. LEXIS 5222, at *2. The Kentucky students sued two nonresidents who had engaged in online commentary about the incident. 2021 U.S. App. LEXIS 5222, at *2-3. One defendant used her Twitter account to post pictures of the students and commentary that "[t]hese are scary faces, indeed. #CovingtonShame . . . . Massive re-education is needed, for these children, their families and their communities." 2021 U.S. App. LEXIS 5222, at *3. The other defendant made numerous posts on her Twitter account including one that stated, "the reply from the school was pathetic and impotent. Name these kids. I want NAMES. Shame them." *Id.*

The *Blessing* court ultimately concluded these social media posts were not enough for the exercise of personal jurisdiction over the nonresident defendants. *Id*. The panel began its analysis with this circuit's well-settled law that "personal jurisdiction is absent when the communication was not specifically directed at the

forum state." 2021 U.S. App. LEXIS 5222, at * 21 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F. 3d 1110, 1114 (6th Cir. 1994) and *Cadle Co v. Schlictmann*, 123 F. App'x 675, 679 (6th Cir. 2005)).  Even though the *Blessing* defendants urged people through their posts to identify and shame the Kentucky students and contact their school in Kentucky, this conduct fell short of directly aiming their posts at the forum.  *Blessing*, 2021 U.S. App. LEXIS 5222, at *34.

Here, Defendant Cole provided comments while at her Arizona home to a Vancouver-based journalist concerning her daughter's involvement with TFU for Vice Media, an online news outlet.  Plaintiffs surmise that Defendants chose the Vancouver based reporter and Vice Media principally, in part, because Vice Media's article would target U.S. customers in close-proximity, such as in Southeast Michigan.  Plaintiffs offer no evidence that Vice Media is targeted to customers in Michigan.  Nor do they explain why a Canadian news source would have been selected as opposed to a local southeast Michigan news source. Plaintiff Jeffrey Ayan has provided an affidavit, but it sheds no further light on Vice Media, its circulation and target audience. Plaintiffs may not stand on their pleadings alone but must come forward with specific facts showing this Court has jurisdiction.

Moreover, the only reference to this forum is the Vice Media author's description of the Plaintiffs as "glassy eyed Michigan YouTubers." This statement is not attributable to Defendant Cole.  While parents who declined to be identified

16

for the Vice Media article claimed to have reached out to the Farmington Hills, Michigan, police department, Defendant Cole identified herself for both articles, she thus did not make this statement.  Most importantly, the "focal point" of the article was not Michigan, as in *Calder*.  *See Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994) (distinguishing case from *Calder* because the press release's "focal point" was not the forum state).  Plaintiffs have not demonstrated Defendant Cole's statements to the Canadian journalist were expressly directed at Michigan.

Additionally, Defendant Cole's posts to Reddit and other social media outlets were not directed at Michigan or its residents. The majority of the posts were made in a public subreddit dedicated to followers and those interested in TFU, an organization with "business across the Internet."  ECF No. 1, PageID.3 Michigan is not identified anywhere on the subreddit's comment board. Defendant Cole's posts concerned TFU's business practices and did not reference TFU's place of business or incorporation. While Defendant Cole identifies the Plaintiffs by their first initials in one of the posts, she discusses only their business practices and does not mention Michigan or even allude to Plaintiffs' headquarters or residence.  Here, again, Michigan "was not the focal point" of Defendant Cole's posts and comments. *Id.; see also Blessing,* 2021 U.S. App. LEXIS 5222, at *33. As in *Blessing*, nothing posted by Cole "specifically targeted or was even directed

17

at [Michigan] readers, as opposed to the residents of other states[,]" and Plaintiffs "do not allege that [Defendant Cole] has any [social media] followers in [Michigan]." *Id.* There is no evidence that Defendant Cole posted her comments on social media "hoping to reach [Michigan] specifically as opposed to" her social media followers generally. *Id*.

Plaintiffs claim Michigan-based TFU members have read the Vice Articles and Defendant Cole's posts about TFU and cancelled their contracts with TFU. Plaintiffs cannot rely on "third parties and their connections with the forum state" to establish Defendant Cole's minimum contacts with Michigan. *Id*.  Like the *Blessing* defendants, Defendant Cole's social media posts "formed no contacts" with Michigan. *Id*.  Defendant Cole "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" Michigan.  *Id*.  Defendant Cole's social media posts and comments "did not create sufficient contacts with [Michigan] simply because the plaintiffs have [Michigan] connections."  *Id*. (quoting *Walden*, 571 U.S. at 284) (internal quotation marks omitted).

The case law relied upon by Plaintiffs is neither controlling nor persuasive, and it is easily distinguishable. In those cases, the nonresident defendants either had preexisting relationships with the plaintiff, the forum state or contacted the plaintiff in the forum directly.  None of those facts are present here.  *See Park W. Galleries, Inc. v. Hochman*, No. 08-12247, 2009 U.S. Dist. LEXIS 22429, *7 (E.D.

Mich. Mar. 19, 2009) (nonresident company had business relationships with Michigan residents); *see also Hinson v. Yates,* No. 1:17-cv-639, 2018 U.S. Dist. LEXIS 127919, *17 (W.D. Mich. Jul. 9, 2018) (nonresident defendant had "transacted some business with plaintiff in Michigan[,]" which "[wa]s sufficient to establish limited jurisdiction under § 605.705(1)[.]")

In this matter, Plaintiffs point to no evidence that Defendant Cole has any preexisting relationship with Michigan. Nor do the Plaintiffs show that Cole intentionally directed her postings or comments to the Plaintiffs in the forum state or to any of Plaintiffs' customers in the forum state. Rather, she merely made posts on several websites and reposted the Vice Media articles that included her comments about TFU, all of which could be read by anyone. *Blessing*, 2021 U.S. Dist. LEXIS 5222, at *31-32 n.15 ("posting allegedly defamatory comments or information on an internet site, does not, without more subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside.")(quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011)).

Plaintiffs' position relies heavily on Defendant Cole's awareness that Plaintiffs lived in, and TFU was incorporated in Michigan and that the brunt of their injury occurred in Michigan. Defendant Cole disputes this fact and claims she did not learn of the Plaintiffs' residence until the first Vice Media article was

published on February 5, 2020.  At this Rule 12(b)(2) stage, the Court must construe the facts in the light most favorable to the Plaintiffs and may not consider conflicting facts offered by Defendant Cole.  *GM L.L.C.*, 2016 U.S. Dist. LEXIS 40902, at *7-8.

In any event, something more than knowledge of the Plaintiffs' presence in the forum must be found, such as purposefully reaching into the forum state to create reputational harm to the plaintiff in the forum state as in *Calder*.  *See Walden*, 571 U.S. at 289; *see also Lifestyle Lift Holding, Inc. v. Prendiville*, 768 F. Supp. 2d 929, 939 (E.D. Mich. 2011).  Here, Plaintiffs do not offer "something more" to establish Defendant Cole's posts and comments were directed at Michigan. Defendant Cole's posts and comments fail to mention Michigan, they are not aimed at Michigan, nor are they directed to Plaintiffs.  While Plaintiffs may have felt injury in Michigan, Defendant Cole's posts and comments do not connect her to Michigan in any meaningful way.  *Blessing*, 2021 U.S. Dist. LEXIS 5222, at *29.  Plaintiffs' injury in Michigan happened "not because anything independently occurred there, but because [Michigan] is where the Plaintiffs chose to be."  *Id*. at *35-36. This is insufficient to comport with Defendant Cole's federal due process rights.   Plaintiffs have failed in their *prima facie* burden to establish with "reasonable particularity sufficient contacts between" Defendant Cole and Michigan to support this Court's jurisdiction. *Theunnissen*, 935 F.2d at 1458.

20

### C.  Transfer

Finally, Plaintiffs also request that the Court transfer this matter to the United States District Court for the District of Arizona pursuant to 28 U.S.C. §§ 1631 or 1406(a), if the Court determines it lacks personal jurisdiction over Defendant Cole.  When a district court lacks personal jurisdiction over a defendant, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed."  *Roberts v. Paulin*, No. 07-CV-13207, 2007 U.S. Dist. LEXIS 80490, *20-21 (E.D. Mich. Oct. 31, 2007) (quoting 28 U.S.C. § 1631 and citing *Roman v. Ashcroft*, 340 F.3d 314, 328-29 (6th Cir. 2003)).  Section 1406(a) also permits transfer when the interest of justice supports the transfer despite the fact that "the court in which it was filed had [no] personal jurisdiction over the defendants[.]") *Id*. at *21 (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)).

It is within the sound discretion of the district court "whether to transfer 'in the interest of justice' or to dismiss the case[.]." *Id.* (quoting *Audi AG & Volkswagon of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002)). "Unless evidence exists that the case was brought in the improper venue in bad faith or to harass the defendant, the interest of justice generally requires a transfer

rather than a dismissal." *Id*. at *22 (citing *De La Fuente v. ICC*, 451 F. Supp. 867, 872 (N.D. Ill. 1978)).

Here, the Court finds the interest of justice does not warrant transfer under 28 U.S.C. §§ 1404(a) or 1631 in light of Plaintiffs' apparent bad faith bringing this action in an improper forum in order to increase the litigation costs for Defendant Cole. Additionally, Plaintiffs have failed to identify any prejudice and the Court finds none. This case is in its infancy and Plaintiffs do not suggest the statute of limitations will preclude their claims against Defendant Cole in the proper forum. For these reasons, the Court declines to transfer this action to the United States District Court for the District of Arizona.

## IV.   CONCLUSION

Accordingly, Defendant Louise Cole's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No.5] is GRANTED.

SO ORDERED.

Dated: March 23, 2021                    /s/Gershwin A. Drain
                                         GERSHWIN A. DRAIN
                                         United States District Judge

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys on
March 23, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager